IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|                          |   |                    |
|--------------------------|---|--------------------|
| MICHAEL L. YOUNGER and   | § |                    |
| JOE HENRY MOORE,         | § |                    |
|                          | § |                    |
| Plaintiffs,              | § |                    |
|                          | § |                    |
| vs.                      | § | No. 07-2139-JDB/tmp |
|                          | § |                    |
| CANNON, et al.,          | § |                    |
|                          | § |                    |
| Defendants.              | § |                    |
|                          | § |                    |

ORDER OF DISMISSAL
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

On January 31, 2007, Plaintiffs Michael L. Younger, prison registration number 220417, and Joe Henry Moore, prison registration number 112980, inmates at the West Tennessee State Prison ("WTSP"), Site 3, in Henning, Tennessee, filed a joint complaint under 42 U.S.C. § 1983 in the United States District Court for the Middle District of Tennessee at Nashville. On February 1, 2007, United States District Judge William Haynes entered a memorandum and order denying Plaintiffs' motion to reopen a closed class action, <u>Grubbs v. Reynolds, et al.</u>, No. 80-3404 (M.D. Tenn. May 1993); dismissing Plaintiff Younger's claims against Defendants Mo Ressiki, Doctor Boatwright, Pam Jenkins, Bettie, Shirly, Warwin, Walwyn, Doug Taylor, Vicky Sparks, employees of the Lois Deberry Special Needs

Facility ("DSNF") in Nashville, Tennessee; dismissing Plaintiff Moore's claims about his hip condition and subsequent surgery at DSNF arising before September 15, 2000, as barred under the doctrines of issue and claim preclusion due to the determination in <u>Moore v. Campbell, et al.</u>, No. 00-1244(M.D. Tenn. Dec. 21, 2000); and transferring the remaining claims against Defendants employed by the WTSP to this Court.[1]

I. <u>Claims of Joe Henry Moore</u>

Moore alleges in conclusory fashion that he has "been suffering with needless human conduct by prison medical staff since ... the years of 1992 through 2006" and has not been provided health care for his serious medical needs.  He attached an affidavit signed on September 15, 2002, which alleges that Physician's Assistant Bill Harbor knew of Moore's pain and problems in his hip "from 92-99," failed to refer him to an orthopedic surgeon, failed to allow him to see the doctor, only provided him with pain medication, and failed to inform him the hip disease was degenerative.  Moore also attached a statement, signed on December 20, 2006, summarizing his symptoms and treatment from June 15, 1987 through January 25, 2001, and various physicians' orders covering the period 1994 through 2003. The Plaintiff alleges in the affidavit that WTSP law library workers

---

[1] The Clerk has recorded Doctor Adams as a defendant twice.  The Clerk shall terminate (f/n/u) Adams as a defendant.  The Clerk has also omitted listing Doctor Barret Matthews as a defendant and therefore, shall add Barret Matthews as a Defendant.  All other defendants are correctly recorded.

are "inadequate" and no one can "get legal help unless they pay for it."

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a federal court to dismiss a complaint without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731 (2001) (prisoner seeking only money damages must exhaust administrative remedies although damages are unavailable through grievance system). Furthermore, § 1997(e) requires the prisoner to exhaust his administrative remedies before filing suit and, therefore, he cannot exhaust these remedies during the pendency of the action. Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999).

Moore totally fails to allege that he filed a grievance regarding inadequate law library workers. He has not attached a copy of any grievances or response which addresses this claim. Plaintiff has not satisfied his burden of demonstrating that he exhausted his administrative remedies on his claim that law library workers are inadequate. In accordance with Jones v. Bock, 127 S. Ct. 910, 923-26 (2007), this unexhausted claim is dismissed sua sponte and without prejudice, pursuant to 42 U.S.C. § 1997e(a).

Plaintiff's allegations for inadequate medical treatment occurring before September 15, 2000, were dismissed by Judge Haynes memorandum and order entered on February 1, 2007. The remaining allegations are summarized as follows: On September 15, 2000, Moore signed up for sick call to inform the medical staff his one inch sole was coming apart. On December 20, 2000, Plaintiff was transported to the shoe distributor. On January 12, 2001, Moore filed a grievance against medical staff for denying him adequate medical treatment because staff did not schedule him to see the doctor about his pain. On January 19, 2001, the inmate was taken to see the foot physician to determine a shoe size. On January 25, 2001, Plaintiff was denied medical treatment and medication for foot pain.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Even claims that have not been exhausted may be dismissed on the merits. 42 U.S.C. § 1997e(c)(2).[2] Plaintiff Moore's remaining claims are also subject to dismissal.

---

[2] To the extent Plaintiff's exhibits and allegations are insufficient to demonstrate total exhaustion, the Court screens his complaint under 42 U.S.C. § 1997e(c)(2).

Moore filed this complaint on January 31, 2007. His allegations concern events occurring over six years before the complaint was filed. A one-year statute of limitations is applicable to § 1983 actions in Tennessee. Tenn. Code Ann. § 28-3-104(a); see Wilson v. Garcia, 471 U.S. 261, 266-268 (1985); Bernt v. Tennessee, 796 F.2d 879 (6th Cir. 1986). Moore's claims are time barred and are dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

II. Claims of Michael Younger

Younger alleges that he suffers from Hepatitis C, infected toenails, and "knots" of an unidentified origin. Plaintiff has submitted a medication log which covers the period from February of 2002 through January 2003. He has also included a daily log of his complaints and treatment from December of 2002 through December 13, 2006. Younger filed a letter from Dr. Donald Boatright, dated December 5, 2006, which states:

> Based on the review of your documents and the medical review submitted by Roberta Burns, M.D., FMM State Medical Director, it is our conclusion that you are receiving appropriate medical treatment for the conditions listed in your complaint. I am sorry that you, however, are not satisfied with the care you are receiving. I am forwarding this letter to your health services administrator. Please use this as an opportunity to sit down with Ms. Phillips and discuss your followup treatment.

Younger's claims against DSNF Defendants were dismissed by Judge Haynes, therefore, this Court has reviewed the logs for

allegations against the remaining Defendants.  Plaintiff's logs consist of copious notes of symptoms, visits to nurses and doctors, treatment and medication given, and tests ordered and cancelled. Many of the notes do not reveal who examined Plaintiff, rendered treatment, or gave the medication.  The allegations pertaining to named Defendants are as follows:

On April 9, 2002, Younger asked Defendant James Boyette about missing pills and was told that they were given to other inmates. On May 2, 2002, Plaintiff was told by Dr. Cannon that he would be taking pills and shots for a year and would have both toenails removed.  Younger states that in May of 2002, Dr. Cannon told him he was not the only one taking a specific medication but would not reveal who else was taking it.

Plaintiff alleges that he saw Nurse Williams on July 28, 2004, and that she was very nice and scheduled him to see the doctor because he was hurting and had blood in his stool.  He claims that on August 18, 2004, Nurse Houston talked crazy to him but also placed him on the list for a doctor visit.  Younger saw Dr. Adams on August 20, 2004, and related his problems with knots on his back and pain.  He alleges that Dr. Adams "acted as if I said nothing at all to him."  Adams ordered antibiotics, Robitussin, and an inhaler. Younger contends that Dr. Adams could not get his toe numb before removing his toenail on September 23, 2004, and he passed out from the pain.  He claims that on September 20, 2004, Dr. Adams ordered prednisone, ibuprofen, and antibiotics.  On October 11, 2004,

6

Plaintiff notes that his one-a-day vitamins were stopped by Dr. Adams. On October 26, 2004, Younger reports his visit with Dr. Adams was "like talking to a wall" with Dr. Adams not answering him about seeing an infectious disease doctor. Dr. Adams did order three shots and more antibiotics.

Plaintiff reports that on March 1, 2005, Gail Matthews was the nurse in charge when he was given medication which either he could not tolerate because of the Hepatitis C or to which he had an allergic reaction. He alleges that Matthews got the remaining pills from him, instructed him he could not take them, and gave him Benadryl. The inmate asserts that he was in the prison clinic for three days and Nurse Matthews told him his urine sample contained blood.

Younger alleges that on September 2, 2005, he saw Dr. Adams about open sores on his neck and knots under both arms and legs. He complains that although Dr. Adams told him he would order an ultrasound and a magnetic resonance imaging (MRI) study, Adams did not do so. Plaintiff relates that after arguing with Dr. Adams, Adams told him that the MRI had been cancelled, scheduled a visit with a surgeon in Nashville, and ordered more antibiotics. Younger claims that Dr. Adams did not discuss Younger's toenails, although he "was there for that also" and was sent to DSNF in Nashville for further evaluation.

Plaintiff questioned Dr. Adams on December 21, 2005, about the cancellation of the MRI and ultrasound. Dr. Adams responded that he

did not order them and did not feel knots on Plaintiff's back and arms even though Younger reported severe back pain from knots on his back. The Plaintiff states that he wrote Health Director Donna White, who told him she would have his files reviewed and to sign up for sick call.

Younger states that on April 18, 2006, he saw Dr. Adams, asked about the MRI and ultrasound, and reported sores and infected toenails. Dr. Adams told Plaintiff the sores were from his liver and refused to answer questions about Plaintiff's treatment but scheduled him to see a doctor about his low back complaints. Younger relates numerous other visits with Dr. Adams where he was examined, medication was ordered, and his requests for an MRI were discussed. Plaintiff ultimately received an MRI of his low back.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Even claims that have not been exhausted may be dismissed on the merits. 42 U.S.C. § 1997e(c)(2).[3] Plaintiff's complaint is subject to dismissal in its entirety.

---

[3] To the extent Plaintiff's exhibits and allegations are insufficient to demonstrate total exhaustion, the Court screens his complaint under 42 U.S.C. § 1997e(c)(2).

Plaintiff has made no allegations of any individual action or inaction by Defendants Robbie Jowers, Robbie Saxton, John Thobe, Ivens, Lewis, Doug Pauley, Fransisco, Margaret Griffith, Earl Vicker, and Bill Harbor. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

The Eighth Amendment prohibits cruel and unusual punishment. See generally Wilson v. Seiter, 501 U.S. 294 (1991). Under Estelle v. Gamble, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id.

An Eighth Amendment claim consists of objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at

9

834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. The subjective component mandates that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03. The official's intent must rise at least to the level of deliberate indifference. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

Within the context of Estelle claims, the objective component requires that the medical need be sufficiently serious. Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)(quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To make out a claim of an Eighth Amendment Estelle violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976). The Court clarified the meaning of deliberate indifference in Farmer v. Brennan, as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. Id. 511 U.S. at 835-36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. See Estelle, 429 U.S. at 106.

10

The logs submitted by Plaintiff establish that he has been continually examined, evaluated, and treated for numerous medical problems. To the extent any Defendant was negligent in Plaintiff's diagnosis, treatment, or evaluation, such error would amount at most to medical malpractice. "[A] complaint that a physician [or nurse] has been negligent in treating or failing to treat a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 105-06. The complaint does not allege any facts supporting a claim that the Eighth Amendment was violated. A difference of opinion between a prisoner and medical personnel about diagnosis or treatment fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need. Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Additionally, Defendant Donna White cannot be held liable on the basis of her supervisory position. There is no respondeat superior liability under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984) (liability under § 1983 in a defendant's personal capacity must be predicated upon some showing of direct, active participation in the alleged misconduct).

The Court therefore DISMISSES Younger's claims in their entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

III. Appeal Issues

Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on any defendant, but has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by either Plaintiff would not be taken in good faith and Plaintiffs may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if either Plaintiff appeals the dismissal of this case.[4] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiffs are instructed that, if they wish to take

---

[4] The appellate filing fee is $455.

advantage of the installment procedures for paying the appellate filing fee, they must comply with the procedures set out in McGore and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, the dismissal of this complaint for failure to state a claim counts as a strike for each Plaintiff.

IT IS SO ORDERED this 2nd day of May, 2008.

                                      s/ J. DANIEL BREEN
                                      UNITED STATES DISTRICT JUDGE